## GREAT SOUTHERN FIRE PROOF HOTEL COMPANY *v.* JONES.

### CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE SIXTH CIRCUIT.

Argued February 29, March 1, 1904.—Decided April 4, 1904.

The object of giving to the national courts jurisdiction to administer. the laws of the States in controversies between citizens of different States was to institute independent tribunals which would be unaffected by local prejudices and sectional views, and it would be a dereliction of their duty not to exercise an independent judgment in cases not foreclosed by previous adjudication. *Burgess* v. *Seligman,* 107 U. S. 20.

Without qualifying the principles that, in all cases, it is the duty of the Federal court to lean to an agreement with the state court, where the issue relates to matters depending upon the construction of the Constitution or laws of the State, and that the Federal court is bound to accept decisions of the state courts construing state statutes rendered prior to the making of the contract on which the cause of action is based, such duty does not exist in regard to decisions of the state court rendered after the cause of action has arisen, although before the action itself was commenced, when the Federal court in the exercise of its independent judgment reaches a different conclusion from the state court.

For the reasons stated in the opinion of the Circuit Court of Appeals, 86 Fed. Rep. 371, §§ 3184, 3185, of the Revised Statutes of Ohio relating to the filing and enforcement of mechanics' liens, do not deprive the owner of his property without due process of law nor unreasonably interfere with his liberty of contract and are not in these or other respects repugnant to the constitution of that State or the Constitution of the United States.

THE facts are stated in the opinion of the court.

*Mr. Gilbert H. Stewart* and *Mr. Henry Gumble* for petitioners: The mechanic's lien law of Ohio of 1894 is unconstitutional because: (*a*) It denies to the owner of real estate the right of acquiring, possessing and protecting property, and the right of contract in relation thereto, of making and enforcing contracts, of fixing and limiting the consideration therefor, and the manner and time of payment, and is not for the equal protection and benefit of the people, and therefore contravenes sections 1 and 2 of the Bill of Rights.

(*b*) It deprives the real estate owner of his property without due process of law, and of the equal protection of the laws, abridges the privileges of citizens of the United States as regards the rights of contract and is therefore unconstitutional and in conflict with sec. 1, art. XIV, of the Constitution of the United States. Boisot on Mech. Liens, § 228; *Lion Hardware Co.* v. *Young,* 55 Ohio St. 423; *Thaxter* v. *Williams,* 14 Pick. 49, 53; *People* v. *Gilson,* 109 N. Y. 398; *Butchers' Union Co.* v. *Crescent City Co.,* 111 U. S. 755; *Association* v. *Crescent City Co.,* 1 App. 398; *State* v. *Julow,* 129 Missouri, 172.

The Ohio Supreme Court held that in so far as the law gives a lien on the property of the owners to sub-contractors, laborers and those who furnish machinery, material or tile to the contractor, is unconstitutional and void. All to whom the contractor becomes indebted in the performance of his contract, are bound by the terms of the contract between him and the owner. And for similar cases see *State* v. *Iron Co.,* 55 Ohio St. 442; *Cleveland* v. *Construction Co.,* 67 Ohio St. 197; *Palmer* v. *Tingle,* 9 O. C. C. 708; Overton on Liens, § 553; *Stewart* v. *Wright,* 52 Iowa, 335; *John Spry Lumber Co.* v. *Trust Co.,* 77 Michigan, 199; *Schroeder* v. *Galland,* 134 Pa. St. 277; *Mellis* v. *Race,* 78 Michigan, 80; *Snell* v. *Race,* 78 Michigan, 334; *Waters* v. *Wolfe,* 162 Pa. St. 153, 170; *Meyer* v. *Berlandi,* 39 Minnesota, 438; *O'Neil* v. *St. Olaf's School,* 26 Minnesota, 329; *Laird* v. *Moonan,* 32 Minnesota, 358; *Selma Factory* v. *Stoddard,* 116 Alabama, 251; *Renton* v. *Conley,* 49 California, 187; *McAlpine* v. *Duncan,* 16 California, 127; *Bowen* v. *Aubrey,* 22 California, 571; *Henry* v. *Rice,* 18 Mo. App. 497.

The Supreme Court of Ohio held the mechanic's lien law of 1894 unconstitutional because it invaded the liberty and property rights of the owner, for the privilege of contracting is both a liberty and a property right. Liberty includes the right to acquire property, and that means and includes the right to make and enforce contracts. The right to make contracts is one of the attributes of property, and when an individual is deprived of such right he is deprived of his property within

the meaning of the Constitution. *Ritchie* v. *The People*, 155 Illinois, 98; *Forer* v. *People*, 141 Illinois, 171; *State* v. *Loomis*, 115 Missouri, 307; *Matter of Jacobs*, 98 N. Y. 98; *Leep* v. *St. L. I. M. & S. Ry. Co.*, 58 Arkansas, 407.

. The act of 1894 is obnoxious as class legislation, for it imposes upon the property owner a burden attaching to no one else. It is not uniform in its operation. For other cases involving same principle, see *State* v. *Ferris*, 53 Ohio St. 314; *Hocking Valley Coal Co.* v. *Rosser*, 53 Ohio St. 12; *Gulf, Col. &c. Ry.* v. *Ellis*, 165 U. S. 150; *Ritchie* v. *People*, 155 Illinois, 98; *Godcharles* v. *Wigeman*, 113 Pa. St. 431; *State* v. *Goodwill*, 33 W. Va. 179; *Braceville Coal Co.* v. *People*, 147 Illinois, 66.

It is contrary to the first principles of civil liberty and natural justice, and to the spirit of our constitutional laws, that any one citizen should enjoy privileges and advantages which are denied to all others, under like circumstances; or that one should be subjected to losses, damages, suits or actions from which all others under like circumstances are exempt. *Holden* v. *James*, 11 Massachusetts, 396; *S. & N. Ala. R. R. Co.* v. *Morris*, 65 Alabama, 194, 199; *State* v. *F. C. Coal Co.*, 33 W. Va. 188; *Eden* v. *People*, 161 Illinois, 296; *Ex parte Jentzsch*, 112 California, 468; *People* v. *Gilson*, 109 N. Y. 389; *Pembina Co.* v. *Pennsylvania*, 125 U. S. 181, 188. Such a law is an encroachment on the just liberty of both workman and employed. Cases *supra* and *State* v. *Coal Co.*, 36 W. Va. 856; Brannon on Fourteenth Amendment, 110, 112; *Allgeyer* v. *Louisiana*, 165 U. S. 578, 590.

This law deprives the owner of his property without due process of law. See cases *supra*. "Due process of law" and "the law of the land" are synonymous, and used interchangeably. Cooley's Const. Lim. 3d ed. § 353; *Millett* v. *People*, 117 Illinois, 294.

Due process of law means "that every citizen shall hold his life, liberty, property and immunities under the protection of the *general* rules which govern society." Everything which may pass under the form of an enactment is not, therefore, to

be considered as the law of the land. Cooley's. Const. Lim. 3d ed. § 353. Such general public law must be founded on reason. *Harding* v. *People,* 160 Illinois, 439; *Ex parte Newman,* 9 California,* 518; *Ex parte Andrews,* 18 California, 678. See dissenting opinion in *Mallory* v. *Abattoir Co.,* 80 Wisconsin, 180. As to due process and equity of law, see also *Barbier* v. *Connolly,* 113 U. S. 31; *Bell's Gap R. Co.* v. *Pennsylvania,* 134 U. S. 238; *Davison* v. *New Orleans,* 96 U. S. 107; *Kentucky Railroad Tax Cases,* 115 U. S. 33; *Chicago, M. & St. P. R. Co.* v. *Minnesota,* 134 U. S. 418; *State ex rel. R. & W. Comm.* v. *C. M. & P. R. Co.,* 38 Minnesota, 281; *Minneapolis & E. R. Co.* v. *Minnesota,* 134 U. S. 467.

To authorize A, through the agency of a sub-contractor, to impose an arbitrary, unjust and absolute liability upon B, without his default, and contrary to the express stipulations. in the written agreement between them, and without any notice that will enable him to protect himself against such liability, and without his violating any statute or any law, or committing any tort or wrong, is, certainly, to deprive B of his property or rights of property without due process of law, and to deprive him of the equal protection of the laws. *King* v. *Hayes,* 80 Maine, 206; *Ulman* v. *Mayor,* 72 Maryland, 587; *Garvin* v. *Daussman,* 114 Indiana, 429; *Oregon R. & N. Co.* v. *Smalley,* 1 Washington, 206.

Cases cited in opinion of the court below can be distinguished and are not applicable.

The law in question is contrary to the spirit of the Constitution, in violation of the great first principles of the social compact and cannot be considered a rightful exercise of legislative authority. *Calder* v. *Bull,* 3 Dall. 386; *Gulf, Colo. & Santa Fé R. R. Co.* v. *Ellis,* 165 U. S. 150; *Wilkinson* v. *Leland,* 2 Pet. 658; 3 Am. & Eng. Ency. of Law, 674; *Osborne* v. *Nicholson,* 13 Wall. 662; *Gunn* v. *Barry,* 15 Wall. 623; *Walker* v. *Cincinnati,* 21 Ohio St. 41.

The argument that the lien law was read into and made a part of the contracts of the lien claimants and owner was

thereby bound, is without merit. *Norton* v. *Shelby Co.*, 118 U. S. 442; *Lion Hardware Co.* v. *Young*, 53 Ohio St. 423; 3 Am. & Eng. Ency. of Law, 678; *State* v. *Lessees of Public Works,* 3 Ohio Bull. 265; *Meyer* v. *Berlandi,* 39 Minnesota, 438. An unconstitutional law is void, not from the time it is so declared, but from its enactment. *Findlay* v. *Pendleton,* 62 Ohio St. 80, 88.

If the law is unconstitutional it could not be rendered valid by requiring the contractor to give a bond. *Bardwell* v. *Mann,* 48 N. W. Rep. 1120; *Gibbs* v. *Tally,* 133 California, 373; *Shaughnessy* v. *Surety Co.*, 71 Pac. Rep. 701; *Snell* v. *Bradbury,* 72 Pac. Rep. 150.

The Federal courts should follow the state courts and hold the law unconstitutional. The law of 1894 was a radical departure from previous legislation. As to the history of mechanic's lien law legislation in Ohio, see *Bridge Co.* v. *Bowman,* 43 Ohio St. 37; Rockel & White, Ohio Lien Laws, 47, 50; Treadway & Marlatt's Ohio Mechanic's Lien Law, ch. I; *Hampson* v. *State,* 8 Ohio St. 321; *Copeland* v. *Manton,* 22 Ohio St. 398, 403; *Dunn* v. *Rankin,* 27 Ohio St. 132; *Bullock* v. *Horn,* 44 Ohio. St. 420. In *Palmer* v. *Tingle,* 54 Ohio St. 423, the court simply refused to depart from the doctrine uniformly held heretofore that sub-contractors are bound by the contract with the owner. See also *Stark* v. *Simmons,* 54 Ohio St. 435; *Mack* v. *DeGraff &c.,* 57 Ohio St. 463. *Douglas* v. *Pike Co.*, 101 U. S. 677, was distinguished in 79 Fed. Rep. 483. And see also as to following state court decisions Brannon on Fourteenth Amendment, 397; *Burgess* v. *Seligman,* 107 U. S. 20; *N. Y. Life Ins. Co.* v. *Cravens,* 178 U. S. 389, 395; *Forsyth* v. *Hammond,* 166 U. S. 518; *O'Brien* v. *Wheelock,* 95 Fed. Rep. 883, 904.

Should the court not follow in the wake of the Ohio decisions, then there will be one rule for Ohio creditors, and another for those residents of another State, i. e., claimants for mechanic's liens who are residents of States other than Ohio will have a valid lien, while lien claimants residing in Ohio

will not have such, and this "would be unfortunate, to say the least." *Jencks* v. *Quidwick Co.*, 135 U. S. 457; *Knapp* v. *McCafferty*, 177 U. S. 638; *Bucher* v. *Cheshire*, 125 U. S. 555, 582; *McGahey* v. *Virginia*, 135 U. S. 665; *Polk's Lessee* v. *Wendell*, 5 Wheat. 293.

If the previous decisions of the state court are so firmly established as to constitute a rule of property, then the Federal courts are governed by the previous decisions of the state courts. *Louisville* v. *Palmes*, 109 U. S. 244.

It is immaterial that similar laws have been held constitutional in other States. *Bauserman* v. *Blunt*, 147 U. S. 547; *Union Nat. Bk.* v. *Bank of Kansas City*, 136 U. S. 223; *Louisiana* v. *Pilsbury*, 105 U. S. 294; *Morley* v. *Lake Shore &c. R. Co.*, 146 U. S. 162.

The question whether the statute violated the constitutional guaranty is a legal question. It cannot be tortured into a question of general law or of general jurisprudence, of national or universal application. *DeVaughan* v. *Hutchinson*, 165 U. S. 566; *Railroad Co.* v. *Bank*, 102 U. S. 57; *Van Stone* v. *Stillwell &c. Co.*, 142 U. S. 128.

This court has, in effect, decided that when even some matters of general law are regulated by state statute, the Federal courts will follow the decisions of the state courts construing the statute. If it is regulated by the state constitution, there would be equal truth in the proposition, *Hough* v. *Railway Co.*, 100 U. S. 213, as in the absence of statutory regulations by the State in which the cause of action arose; *Lake Shore & M. S. Ry. Co.* v. *Prentice*, 147 U. S. 101; *B. & O. Ry. Co.* v. *Baugh*, 149 U. S. 368; *Hartford Ins. Co.* v. *Chicago &c. Ry.*, 175 U. S. 91; *Loeb* v. *Trustees &c.*, 179 U. S. 472; *Ahrend* v. *Odiorne*, 118 Massachusetts, 261.

*Mr. George K. Nash* and *Mr. T. J. Keating,* with whom *Mr. Louis G. Addison* was on the brief, for respondents:

This court is not bound to follow the decisions of the Ohio Supreme Court.

The cause of action set out in the amended bill accrued before the decision of the Supreme Court of Ohio was rendered or announced. The former decisions of the Supreme Court of Ohio upon similar contracts and liens, are in conflict with that decision, and the cause of action accrued before such former decisions were reversed by the holding in *Young* v. *The Lion Hardware Company.* The constitutional question is one of general constitutional law, not peculiarly applicable to the constitution of the State of Ohio, but equally applicable to any and all constitutions, including State and Federal. The question is one of general jurisprudence and commercial law. *Burgess* v. *Seligman,* 107 U. S. 20; *Anderson* v. *Santa Anna Township,* 116 U. S. 356.

Decisions of the state court are not necessarily obligatory upon Federal courts where they affect contracts which were valid under the constitution and laws of the State as interpreted and enforced by its highest judicial tribunals at the time they were entered upon. *Rowan* v. *Runnels,* 5 How. 134; *Ohio Life and Trust Co.* v. *Debolt,* 16 How. 432; *Gelpcke* v. *Dubuque,* 1 Wall. 175; *Olcott* v. *The Supervisors,* 16 Wall. 678; *Taylor* v. *Ypsilanti,* 105 U. S. 60; *Douglass* v. *County of Pike,* 101 U. S. 677; *Louisville Trust Co.* v. *Cincinnati,* 47 U. S. App. 36, 46; *Township* v. *Ætna Life Ins. Co.,* 138 U. S. 67, 72; *Miller* v. *Ammon,* 145 U. S. 421; *Carroll County* v. *Smith,* 111 U. S. 556; *Gibson* v. *Lyon,* 115 U. S. 439; *Ohio Life* v. *Debolt,* 16 How. 432; *Board of Commissioners of Stanley Co.* v. *Coler,* 190 U. S. 437. For cases in which lien laws had been sustained prior to this contract, see *Railway Company* v. *Cronan,* 38 Ohio St. 122; *Railway Company* v. *McCoy,* 42 Ohio St. 251; *Weil* v. *State,* 46 Ohio St. 450.

The Ohio lien law is not unconstitutional, citing numerous cases which appear at end of opinion p. 550, *post.*

As to class legislation, see *Summerlin* v. *Thompson,* 31 Florida, 369; *Budd* v. *New York,* 143 U. S. 517; *Wunderle* v. *Wunderle,* 144 Illinois, 40; *Hing* v. *Crowley,* 113 U. S. 703, 708; Cooley's Const. Lim. 5th ed. 482; *Barbier* v. *Connolly,* 113

U. S. 27, 31; *State* v. *Powers*, 38 Ohio St. 54; *Kidd* v. *Pearson*, 128 U. S. 1; *New York* v. *Squire*, 145 U. S. 175; *Atkin* v. *Kansas*, 191 U. S. 207; *Holden* v. *Hardy*, 169 U. S. 366.

*Mr. Talfourd P. Linn*, with whom *Mr. John D. McKennan* was on the brief, also for respondents.

MR. JUSTICE HARLAN delivered the opinion of the court.

The Great Southern Fire Proof Hotel Company, a corporation of Ohio, made a contract with one McClain for the construction of a hotel building and opera house at Columbus, Ohio.

McClain contracted with Jones & Laughlins, Limited, a partnership association organized under the laws of Pennsylvania, for a certain amount of steel to be used in the buildings which he undertook to erect.

Under that contract Jones & Laughlins, Limited, furnished steel of the value of $43,296.74.

Proceeding under certain statutes of Ohio relating to liens for mechanics and others, Jones & Laughlins, Limited, brought suit in the Circuit Court of the United States for the Southern District of Ohio against the Hotel Company, to enforce a lien asserted by them on the hotel building and opera house for the balance due on their contract with McClain. Various persons were made defendants because they asserted claims upon or interest in the property. It was a case in which the jurisdiction of that court depended upon diversity in the citizenship of the parties. Upon final hearing the Circuit Court dismissed the bill on the ground that the statute of Ohio of April 13, 1894, (91 Ohio Laws, 135,) under which Jones & Laughlins, Limited, proceeded, was repugnant to the Constitution of Ohio. 79 Fed. Rep. 477. Upon appeal to the Circuit Court of Appeals, that court, being of opinion that the statute was constitutional, reversed the decree of the Circuit Court. 58 U. S. App. 397; 86 Fed. Rep. 370. The case was

then brought here upon writ of certiorari, and this court, without considering the merits, reversed the judgments of both courts upon the ground that the record did not affirmatively show a case of which the Circuit Court could properly take cognizance, so far as the citizenship of the parties was concerned.· In the opinion then rendered we said that under the circumstances .the plaintiffs should be permitted to amend their pleadings as to the citizenship of the parties; and, if a case could be presented within the jurisdiction of the Circuit Court, the parties should be allowed to proceed to a final hearing on the merits. *Great Southern Fire Proof Hotel Co.* v. *Jones,* 177 U. S. 449.

Upon the return of the cause the plaintiffs filed an amended bill of complaint, which cured the defect in its original bill as to the citizenship of ·the parties. The case went to a final hearing upon the merits, and a decree was rendered in favor of the plaintiffs. That decree was affirmed in the Circuit Court of Appeals. *Great Southern Fire Proof Hotel Co.* v. *Jones,* 116 Fed. Rep. 793. The case is again .here upon a writ of certiorari granted upon motion of the Hotel Company.

The statutory provisions; questions as to the constitutionality . of which have been raised in this case, are certain sections of the Revised Statutes of Ohio, as follows:

"Sec. 3184. A person who performs labor, or furnishes machinery or material for constructing, altering or repairing a boat, vessel, or other. water craft, or for erecting, altering, repairing or removing a house, mill, manufactory, or any furnace or furnace material therein, or other building, appurtenance, fixture, bridge or other structure, or for the digging, drilling, plumbing, boring, operating, completing or repairing of any gas well, oil well or any other well, or performs labor of any kind whatsoever, in .altering, repairing or constructing any oil derrick, oil tank, oil or gas pipe line, or furnishes tile for the drainage of any lot or land by virtue of a contract with, or at the instance of the owner thereof or his agent, trustee, contractor or subcontractor, shall have a lien to secure the

payment of the same upon such boat, vessel or other water craft, or upon such house, mill, manufactory or other building or appurtenance, fixture, bridge or other structure, or upon such gas well, oil well or any other well, or upon such oil derrick, oil tank, oil or gas pipe line, and upon the material and machinery so furnished, and upon the interest, leasehold or otherwise, of the owner in the lot or land on which the same may stand, or to which it may be removed.

"SEC. 3185, Such person, in order to obtain such lien, shall, within four months from the time of performing such labor, or furnishing such machinery or material, file with the recorder of the county where the labor was performed, or the machinery or material furnished, an affidavit containing an itemized statement of the amount and value of such labor, machinery, or material, or any part thereof, with all credits and offsets thereon, a copy of the contract, if it is in writing, a statement of the amount and times of payment to be made thereunder, and a description of the land on which the gas well, oil well, or other wells are situated, or the land on which the house, mill, manufactory, or other buildings, or appurtenance, fixture, bridge, or other structure may stand, or to which it may be removed; and the same shall be recorded in a separate book to be kept therefor, and shall operate as a lien from the date of the first item of the labor performed or the machinery or material furnished upon or toward the property designated in the preceding section, and the interest of the owner in the lot or land on which the same may stand, or to which it may be removed, for six years from and after the date of the filing of such attested statement. If an action be brought to enforce such lien within that time, the same shall continue in force until the final adjudication thereof; and there shall be no homestead or other exemption against any lien under the provisions of this chapter.

"SEC. 3185a. In all cases where the labor, material or machinery referred to in sections 3184 and 3185 shall be furnished by any person other than the original contractor with such

owner, or his agent or trustee, the lien shall not exceed the
actual value of the labor, material or machinery so furnished,
and the aggregate amount of liens for which the property may
be held shall not, in the absence of fraud or collusion between
the owner and original contractor, exceed the amount of the
price agreed upon between the owner and original contractor
for the performing of such labor and the furnishing of such
material and machinery: Provided, if it shall be made to ap-
pear that the owner and contractor, for the purpose of de-
frauding subcontractors, material-men or laborers, fixed an
unreasonably low price in the original contract for any work or
material for which a lien is given under section thirty-one
hundred and eighty-four, the court shall ascertain the differ-
ence between such fraudulent contract price and a fair and
reasonable price therefor, and such subcontractors' material-
men and laborers shall have a lien to the amount of such fair
and reasonable price so ascertained." 91 Ohio Laws, 135, 137.

The contention of the Hotel Company is that the statute
under which Jones & Loughlins, Limited, proceeded was re-
pugnant to the constitution of Ohio; and that the Supreme
Court of Ohio having held in two cases, *Palmer & Crawford* v.
*Tingle,* and *Young* v. *Lion Hardware Company,* 55 Ohio St.
423—determined before the bringing of this suit, but after the
rights of the parties had been fixed by their contracts—that
the statute was inconsistent with the state constitution, the
duty of the Federal court was to follow those decisions, even
if, in the exercise of an independent judgment on the subject,
it was of opinion that the statute was constitutional. Is that
view in harmony with the decisions of this court?

The leading case on this subject is *Burgess* v. *Seligman,* 107
U. S. 20, 33. In that case, which was in the Circuit Court of
the United States, the rights of the parties depended upon a
statute of Missouri, which had not been construed by the
highest court of the State at the time those rights accrued
under it; and the question arose whether the Circuit Court
was entitled to determine for itself what was the true meaning

of the statute. In view of some differences in forms of expression in previous cases, the court deemed it wise to reexamine the subject upon both principle and authority, and to announce the rule by which a Circuit Court of the United States should be guided in case of a conflict of opinion between it and the highest court of the State as to the meaning and legal effect of a local statute upon which the rights of parties depended.

In that case Mr. Justice Bradley, delivering the unanimous judgment of this court, said: "The Federal courts have an independent jurisdiction in the administration of state laws, coördinate with, and not subordinate to, that of the state courts, and are bound to exercise their own judgment as to the meaning and effect of those laws. The existence of two coördinate jurisdictions in the same territory is peculiar, and the results would be anomalous and inconvenient but for the exercise of mutual respect and deference. Since the ordinary administration of the law is carried on by the state courts, it necessarily happens that by the course of their decisions certain rules are established which become rules of property and action in the State, and have all the effect of law, and which it would be wrong to disturb. This is especially true with regard to the law of real estate and the construction of state constitutions and statutes. Such established rules are always regarded by the Federal courts, no less than by the state courts themselves, as authoritative declarations of what the law is. But where the law has not been thus settled, it is the right and duty of the Federal courts to exercise their own judgment; as they also always do in reference to the doctrines of commercial law and general jurisprudence. So when contracts and transactions have been entered into, and rights have accrued thereon under a particular state of the decisions, or when there has been no decision of the state tribunals, the Federal courts properly claim the right to adopt their own interpretation of the law applicable to the case, although a different interpretation may be adopted by the state courts after such rights have accrued.

But even in such cases, for the sake of harmony and to avoid confusion, the Federal courts will lean towards an agreement of views with the state courts if the question seems to them balanced with doubt. Acting on these principles, founded as they are on comity and good sense, the courts of the United States, without sacrificing their own dignity as independent tribunals, endeavor to avoid, and in most cases do avoid, any unseemly conflict with well-considered decisions of the state courts. As, however, the very object of giving to the national courts jurisdiction to administer the laws of the States in controversies between citizens of different States was to institute independent tribunals which it might be supposed would be unaffected by local prejudices and sectional views, it would be a dereliction of their duty not to exercise an independent judgment in cases not foreclosed by previous adjudication."

So in *Carroll County* v. *Smith*, 111 U. S. 556, in which the principal question was as to the validity, under the constitution of Mississippi, of certain proceedings taken under a railroad charter, the Supreme Court of that State having passed on the question, it was contended that its judgment was binding on the courts of the United States. But this court, speaking by Mr. Justice Matthews, said: "It was not a rule previously established, so as to have become recognized as settled law, and which, of course, all parties to transactions afterwards entered into would be presumed to know and to conform to. When, therefore, it is presented for application by the courts of the United States, in a litigation growing out of the same facts, of which they have jurisdiction by reason of the citizenship of the parties, the plaintiff has a right, under the Constitution of the United States, to the independent judgment of those courts, to determine for themselves what is the law of the State, by which his rights are fixed and governed. It was to that very end that the Constitution granted to citizens of one State, suing in another, the choice of resorting to a Federal tribunal. *Burgess* v. *Seligman*, 107 U. S. 20, 33." And in *Anderson* v. *Santa Anna*, 116 U. S. 356, 365, it was

distinctly adjudged that where rights have accrued under a state constitution or statute, "before the state court has announced its construction, the Federal courts, although leaning to an agreement with the state court, must determine the question upon their own independent judgment." In *Pleasant Township* v. *Ætna Life Insurance Co.*, 138 U. S. 67, 72, where the rights of one of the parties depended upon the validity of a statute of Ohio, and which statute the Supreme Court of Ohio had held after the rights of the parties had accrued, under their contract, to be in violation of the constitution of that State, this court, although reaching the same conclusion as that announced by the state court, took care to say that the decision of the state court did not conclude this court, and that concurrence with the views expressed by the state court was the result of the exercise of its independent judgment—citing *Burgess* v. *Seligman* as having settled the law upon this subject.

In *Folsom* v. *Ninety-Six*, 159 U. S. 611, 627, which involved a question of the validity of a state enactment, this court referred to *Burgess* v. *Seligman*, and, speaking by Mr. Justice Gray, said: "There not being shown to have been a single decision of the state court against the constitutionality of the act of 1885 before the plaintiff purchased his bonds, nor any settled course of decision upon the subject, even since his purchase, the question of the validity of these bonds must be determined by this court according to its own view of the law of South Carolina." In *Barnum* v. *Okolona*, 148 U. S. 393, which involved the validity of certain bonds, and which bonds the highest court of the State had adjudged to be void under a local statute, the court said: "As against a party who became the owner of such bonds before the decision of the Supreme Court of the State was rendered, which was the case here, we do not consider ourselves bound by such decision unless we regard it as intrinsically sound." As late as *Stanly County* v. *Coler*, 190 U. S. 437, 445, relating to the validity of certain municipal bonds, this court reaffirmed the same prin-

ciples. To the same effect are other cases which will be found cited in the opinion of the Circuit Court of Appeals in this case when it was first before that court. *Jones* v. *Great Southern Fire Proof Hotel*, 86 Fed. Rep. 370. The only exception to the general rule announced in the above cases arises when the question is whether a particluar statute was passed by the Legislature in the manner prescribed by the state constitution, so as to become a law of the State. *Town of South Ottawa* v. *Perkins*, 94 U. S. 260; *Post* v. *Supervisors*, (*Amoskeag Bank* v. *Ottawa*,) 105 U. S. 667; *Wilkes County* v. *Coler*, 180 U. S. 506, 520.

The plaintiffs insist that the Supreme Court of Ohio, in *Railway Co.* v. *Cronin*, 38 Ohio St. 122, and *Railway Co.* v. *McCoy*, 42 Ohio St. 251—which were determined prior to the contract between McClain and the plaintiffs—announced principles which, being applied here, would sustain the validity of the act of 1894. If this were true, then, in conformity with the settled course of decisions in this court, we should hold that the rights of the plaintiffs under their contract could not be affected by a change of decision in the state court. But, as the Circuit Court of Appeals held, the two cases just referred to should not control the decision here. Those cases, it is true, related to statutes giving liens to those who performed labor and furnished materials in the construction of railroads. But it does not appear that any question was raised or determined in them as to the constitutionality of the particular statutes there involved.

On behalf of the Hotel Company, it is contended that the cases of *Hampson* v. *State*, 8 Ohio, 315, *Copeland* v. *Manton*, 22 Ohio St. 398, *Dunn* v. *Rankin*, 27 Ohio St. 132, and *Bullock* v. *Horn*, 44 Ohio St. 420, all prior to the act of 1894, announced general principles which, being accepted, would necessarily lead to the conclusion reached by the Supreme Court of Ohio in the two subsequent cases, above cited, in which section 3184 of that act was held to be in violation of the state constitution. It is, therefore, contended that our interpretation of the con-.

stitution of Ohio should be controlled by the rule stated in *O'Brien* v. *Wheelock,* 95 Fed. Rep. 883, 905, which involved the validity of certain municipal bonds as well as the validity of a statute of Illinois passed in 1871, the Illinois constitution then in force being the one adopted in 1870. In that case the court observed that the Illinois act of 1871 not having been construed by the Supreme Court of Illinois before the bonds there in question were issued, it was its duty, under the rule announced in *Burgess* v. *Seligman,* to exercise an independent judgment as to the validity of that act under the state constitution. But in so doing the court said two principles should not be overlooked, namely: "(1) That, although the act of 1871 may not have been expressly the subject of judicial construction before the rights of the plaintiffs accrued, this court should give effect to any rules of construction that may have been previously established by the highest court of the State when interpreting similar provisions in the Constitution of 1848; (2) that the Federal courts, for the sake of harmony and to avoid confusion, should 'lean towards an agreement of views with the state courts, if, the question seems to them balanced with doubt,' and endeavor to avoid 'any unseemly conflict with the well-considered decisions of the state courts' upon questions of local law." We have already shown that it was the duty of the Federal court to lean to an agreement with the state court, and we recognize it to be equally its duty, when the rights of parties depend upon the construction of a state constitution, to give effect to any settled rules for construing that instrument which had been announced by the highest court of the State before such rights accrued. The difficulty in applying this principle here is that, prior to the two cases in 55 Ohio St., the Supreme Court of Ohio had not, we think, established any rules of constitutional construction that would necessarily require us to hold the act of 1894 to be unconstitutional.

In our opinion, neither the decisions of *Palmer* v. *Tingle,* *Young* v. *Lion Hardware Co.,* 55 Ohio St. 423, nor any

other case in the Supreme Court of Ohio precluded the Circuit Court from exercising its independent judgment as to the constitutionality of the statute of Ohio here in question. If, prior to the making of the contracts between the plaintiffs and McClain, the state court had adjudged that the statute in question was in violation of the state constitution, it would have been the duty of the Circuit Court, and equally the duty of this court, whatever the opinion of either court as to the proper construction of that instrument, to accept such prior decision as determining the rights of the parties accruing thereafter. But the decision of the state court, as to the constitutionality of the statute in question, having been rendered after the rights of parties to this suit had been fixed by their contracts, the Circuit Court would have been derelict in duty if it had not exercised its independent judgment touching the validity of the statute here in question. In making this declaration we must not be understood as at all qualifying the principle that, in all cases, it is the duty of the Federal court to lean to an agreement with the state court, where the issue relates to matters depending upon the construction of the Constitution or laws of the State.

It remains to dispose of the question of the constitutionality of the Ohio statute upon which this suit is based. In its consideration of the subject the Supreme Court of Ohio, in the *Palmer-Young* cases, referred to the Preamble to the constitution of that State, declaring that "We, the people of the State of Ohio, grateful to Almighty God for our freedom, to secure its blessings and promote our common welfare, do establish this constitution;" to the first section of the Ohio Bill of Rights providing that "all men are, by nature, free and independent, and have certain inalienable rights, among which are those of enjoying and defending life and liberty, acquiring, possessing and protecting property, and seeking and obtaining happiness and safety;" and to the second section of the state constitution declaring that "all political power is inherent in the people. Government is instituted for their equal protection

and benefit." It then said: "The usual and most frequent means of acquiring property is by contract, and one of the most valuable and sacred rights is the right to make and enforce contracts. The obligation of a contract, when made and entered into, cannot be impaired by act of the General Assembly." In view of these constitutional provisions, aided by the general rules of law, the state court held the statute to be unconstitutional and void, so far as it gave (*syllabus*) "a lien on the property of the owner to subcontractors, laborers and those who furnish machinery, material or tile to the contractor;" that "all to whom the contractor becomes indebted in the performance of his contract, are bound by the terms of the contract between him and the owner." 55 Ohio St. 423.

The Circuit Court of Appeals expressed its earnest desire, in the interest of harmony of decision, to come to an agreement with the state court, but its sense of duty compelled it to sustain the constitutional validity of the statute upon which the plaintiffs based their claim. Upon a careful consideration of the objections urged to the statute, and after an extended review of the authorities, the Circuit Court of Appeals held that the statute did not deprive the owner of his property without due process of law, nor unreasonably interfere with his liberty of contract; that the restraints put upon the owner by the provisions in favor of sub-contractors and those who furnished materials to be used by the contractor in execution of his contract with the owner, were neither arbitrary nor oppressive; that such provisions were no more onerous than required by the necessity of protecting those who actually do the work or furnish the material by which the owner is benefited; and that as the legislation in question was sanctioned by the dictates of natural justice, and, as must be conclusively presumed, was known to the owner when he contracted for the building of his house, its requirements could only be avoided by pointing out some specific part of the organic law which has been violated by its enactment.

We are constrained to withhold our assent to the views

expressed by the Supreme Court of Ohio, and to express our concurrence with the Circuit Court of Appeals. The great weight of authority in this country as to the meaning and scope of constitutional provisions substantially like those to be found in the Constitution of Ohio is, in our opinion, against the conclusion reached by the learned state court. Exercising an independent judgment on the subject, we are obliged to so declare. The reasons in support of the constitutionality of the statute are cogently stated in the able and elaborate opinion of Judge Lurton, speaking for the Circuit Court of Appeals in this case. *Jones* v. *Great Southern Fire Proof Hotel Co.*, 86 Fed. Rep. 370. As the reports of the decisions of the Circuit Court of Appeals are accessible to all, we will not encumber this opinion with a restatement of the grounds, so fully set forth by that court, on which the validity of the statute must be sustained. We content ourselves with referring to its opinion, and with citing, in the margin[1] some authorities which, in our judgment, support the views expressed by the Circuit Court of Appeals. It results that the decree must be affirmed.

*It is so ordered.*


MR. JUSTICE WHITE did not hear the argument and took no part in the decision of this case.

[1] *Van Stone* v. *Stillwell & Bierce Manf'g Co.*, 142 U. S. 128; *McMurray* v. *Brown*, 91 U. S. 257; *Blauvelt* v. *Woodworth*, 31 N. Y. 285; *Glacius* v. *Black*, 67 N. Y. 563; *Donahy* v. *Clapp*, 12 Cush. 440; *Bowen* v. *Phinney*, 162 Massachusetts, 593; *White* v. *Miller*, 18 Pa. St. 52; *Spofford* v. *True*, 33 Maine, 283; *Paine* v. *Tillinghort*, 52 Connecticut, 532; *Treusch* v. *Shryock*, 51 Maryland, 162; *Colter* v. *Frese*, 45 Indiana, 96; *Smith* v. *Newbaur*, 144 Indiana, 95; *Title Guarantee & Trust Co.* v. *Wren*, 56 Pac. Rep. (Ore.) 271; *Mallory* v. *La Crosse &c. Co.*, 80 Wisconsin, 170; *Laird* v. *Moonan*, 32 Minnesota, 358; *Albright* v. *Smith*, 2 S. Dak. 577; *Barnard* v. *McKenzie*, 4 Colorado, 251; *Smalley* v. *Gearing*, 121 Michigan, 190; *Hightower* v. *Bailey*, 56 S. W. Rep. (Ky.) 147; *McKeon* v. *Sumner Building & Supply Co.*, 51 La. Ann. 1961; *Roanoke &c. Co.* v. *Karn*, 80 Virginia, 589; *Henry & Coatsworth Co.* v. *Evans*, 97 Missouri, 47; *Cole Manf'g Co.* v. *Falls*, 90 Tennessee, 466; *Gurney* v. *Walsham*, 16 R. I. 698. See, also, 2 Jones' Liens, 286; Phil. Mech. Liens, 324, § 30, 3d ed.